IN THE UNITED STATES BANKRUPTCY COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| IN RE: | * | |
| GEORGE Q. BEAMENDERFER, | * | Chapter 7 |
| d/b/a BEAMENDERFER HOME | * | |
| IMPROVEMENTS, d/b/a PUTT | * | |
| HOME REMODELING, and | * | |
| JACQUELINE A. BEAMENDERFER, | * | |
| a/k/a JACQUELINE A. PUTT, | * | |
| a/k/a JACQUELINE A. FORTNEY, | * | |
| d/b/a PUTT HOME REMODELING, | * | |
|     Debtors | * | |
| | * | Case No.: 1-06-bk-00610MDF |
| GARY L. MITCHELL and | * | |
| LINDA MITCHELL, | * | |
|     Plaintiffs | * | |
| | * | |
| v. | * | Adv. No.: 1-06-ap-00119 |
| | * | |
| GEORGE Q. BEAMENDERFER, | * | |
| d/b/a BEAMENDERFER HOME | * | |
| IMPROVEMENTS, | * | |
|     Defendant | * | |

## OPINION

### Procedural History

On September 20, 2006, Gary and Linda Mitchell ("Plaintiffs") filed the within complaint objecting to the dischargeability of their claim against George Beamenderfer ("Defendant"). Plaintiffs allege that Defendant, who was retained to perform remodeling services at Plaintiffs' home, attempted to conceal his failure to perform services specified in the contract and intentionally damaged Plaintiffs' residence during construction. Plaintiffs paid Defendant $95,440.00 for work that they allege was improperly performed.[1]

---

[1] Debtors' schedule of unsecured creditors lists Plaintiffs as holding a claim in the amount of $25,000.00. Debtors describe the claim cryptically as "Litigation plaintiff." Plaintiffs' complaint does not refer to any state court litigation or judgment involving Plaintiffs' claim. Plaintiffs did not file a proof of claim in the bankruptcy case.

The complaint consists of three counts, one of which has been dismissed.[2] Count One alleges that the debt to Plaintiffs was incurred by false pretenses, false representations or fraud as defined by § 523(a)(2). Count Three alleges that the debt was incurred through a willful and malicious injury committed by Defendant as contemplated by § 523(a)(6).

On July 6, 2007, Steven P. Miner, Esquire, Defendant's attorney, moved to withdraw his appearance in the case. After a hearing was held on August 6, 2007, the motion was granted. Trial of the adversary case was held on October 5, 2007 with Defendant representing himself. The matter is ready for decision.[3]

**Factual Findings**

In September 2004, Plaintiffs engaged Defendant to perform certain construction work on their home, which had been damaged in a flood precipitated by Hurricane Ivan. Defendant submitted a written proposal offering to perform certain services for a specified sum that was accepted by Plaintiffs. The parties subsequently entered into an oral agreement for additional services. Defendant worked on the property between October 4 and December 30, 2004. Under the terms of the parties' agreement, Debtor demolished the existing structure above the foundation, which he then rebuilt. As provided in their agreement, the original floor plan of the home was altered. Defendant installed new kitchen cabinets and appliances, a new bathroom with new fixtures, and enclosed a back porch. The contract between the parties also required

---

[2]Count Two alleged that the debt was incurred by fraud or defalcation while acting in a fiduciary capacity, embezzlement or larceny as contemplated by § 523(a)(4). Pursuant to Defendant's motion to dismiss the complaint, this count was dismissed on January 23, 2007 for failure to state a claim on which relief could be granted.

[3]This Court has jurisdiction pursuant to 28 U.S.C. §§157 and 1334. This matter is core pursuant to 28 U.S.C. §157(b)(2)(A), (I) and (O). This Opinion constitutes findings of fact and conclusions of law made pursuant to Federal Rule of Bankruptcy Procedure 7052.

Case 1:06-ap-00119-MDF    Doc 34    Filed 03/25/08    Entered 03/25/08 14:07:42    Desc
Main Document      Page 2 of 10

Defendant to install new electrical wiring and new plumbing, hang drywall, install trim, paint walls and trim, and install flooring. Defendant's bid on the project stated that the cost would be $83,940.00.

Prior to commencing construction, Defendant completed a building permit application for submission to the township. Without Plaintiffs' knowledge, Defendant stated in the application that the sole purpose of the construction was to install a new roof at a cost of $4,500.00. At the time the building permit was submitted to the township, Defendant and Plaintiffs had entered into an agreement that provided for the reconstruction of Plaintiffs' residence. During the course of construction, Plaintiffs paid Defendant $95,440.00 for his services.

As Defendant performed under the parties' agreement, he used substandard construction methods including cutting floor joists without proper reinforcement, installing a "header" of insufficient vertical strength above a sliding glass door, and installing an electrical outlet that was partially obstructed by a built-in cabinet and was without a proper protective covering. Defendant enclosed the new construction with drywall and siding although he knew that township ordinances required inspections and approvals of the exterior wall insulation and electrical and plumbing work prior to completion of the project. As a direct result of Defendant's intentional failure to obtain the requisite inspections, Plaintiffs were required to engage a new contractor to demolish the renovations and reconstruct a substantial portion of the structure.

## Discussion

Sections 523(a)(2)(A) and (a)(6) provide, in relevant part, that:

(a) A discharge under section 727 . . . of this title does not discharge an individual debtor from any debt-
\*\*\*
    (2) for money, property, services, or an extension, renewal, or refinancing of credit, to the extent obtained by-

3

> (A) false pretenses, a false representation, or actual fraud, other than a statement respecting the debtor's or an insider's financial condition;
>
> ***
>
> (6) for willful and malicious injury by the debtor to another entity or to the property of another entity[.]

11 U.S.C. § 523(a)(2)(A), (a)(6). In furtherance of the fresh start policy of the Bankruptcy Code, "exceptions to discharge are generally construed 'narrowly against the creditor and in favor of the debtor.'" *In re Mehta*, 310 F.3d 308, 311 (3d Cir. 2002) *quoting In re Pelkowski*, 990 F.2d 737, 744 (3d Cir. 1993). As the party objecting to discharge, the burden of proof rests on the creditor to prove that the debt is not dischargeable by a preponderance of the evidence. *Grogan v. Garner*, 498 U.S. 279, 288-89, 111 S. Ct. 654, 660 (1991). To prove that a debt arose out of either a willful and malicious injury or fraud, a creditor must produce enough evidence to convince the court that the allegations are more likely true than false. *Matter of Briscoe Enterprises, Ltd., II*, 994 F.2d 1160 (5th Cir. 1993). Both § 523(a)(2)(A) and § 523(a)(6) allow a court to except from discharge claims arising from intentional, wrongful acts by the debtor.

    *a. Plaintiffs' case under section 523(a)(6).*

"An injury is willful and malicious under the Code only if the actor purposefully inflicted the injury or acted with substantial certainty that injury would result." *In re Conte*, 33 F.3d 303, 305 (3d Cir. 1994). For a debt to be nondischargeable, the injury must have been intended, not merely the result of a deliberate or intentional act. *Kawaauhau v. Geiger*, 523 U.S. 57, 61, 118 S. Ct. 974 (1998). Even a deliberate action that has a high probability of producing

4

harm is not considered willful and malicious if the injury was not intended or substantially certain to occur. *Conte*, 333 F.3d at 307.

Under this standard, I have no difficulty finding that Plaintiffs' claim against Defendant is not dischargeable.[4] Defendant admitted that he knowingly failed to obtain inspections of the exterior insulation and the electrical and plumbing work prior to enclosing the structure in siding and drywall. He knew that these inspections were required by local ordinance, but he failed to arrange for them to be performed by the township. Further, he intentionally filed a false application with the township that under-reported the work being performed. Defendant did not dispute that, as the contractor on the job, it was his duty to arrange inspections by the township at various stages in the construction. Because of these failures, it was substantially certain that Plaintiffs could not obtain a certificate of occupancy without demolishing some of the work performed by Defendant and, further, that Plaintiffs would incur additional expenses to reconstruct their home. Accordingly, I conclude that Plaintiffs have a nondischargeable claim against Defendant for the following expenses: (1) demolition costs to allow for the required inspections and (2) the services of a second contractor to repair the damage. Further hearing will be required to establish the amount of these expenses.

I do not find, however, that Plaintiffs' allegations regarding substandard workmanship support a finding that these claims are nondischargeable.[5] Defendant does not dispute that he

---

[4]Because Plaintiffs filed no proof of claim (and were not required to do so), the existing record does not contain evidence from which I can determine the amount of their nondischargeable claim. A further proceeding will be necessary to determine that amount.

[5]My findings of fact are based on allegations in the amended complaint that Defendant admitted during the course of his testimony. All other allegations in the amended complaint regarding Defendant's use of improper construction methods either were not sufficiently supported in the record, undermined by Plaintiffs' own testimony, or denied by Defendant. For

5

used substandard construction methods in cutting weight-bearing floor joists without proper reinforcement. Plaintiffs produced insufficient evidence, however, that Defendant consciously intended to injure them or their property by cutting the joists. Defendant testified, and Plaintiffs did not refute, that his intention in cutting the joists was not to cause harm but to accommodate commodes that Plaintiffs instructed him to install in a bathroom. Moreover, Defendants produced insufficient evidence that harm did result from cutting the joists, or that harm was substantially certain to occur. Again, under *Conte*, even a high likelihood of harm from an intentional act is not sufficient to render a debt non-dischargeable under § 523(a)(6).

Defendant also does not dispute that he used substandard construction methods in installing a "header" of insufficient vertical strength above a sliding glass door. Again, however, there was insufficient evidence that Defendant intended to cause injury to Plaintiffs when he installed this header, or that injury was substantially certain to occur. Similarly, Defendant's improper installation of an electrical outlet was not proven to have been intended to injure Plaintiffs, nor was it shown that injury was substantially certain to occur. Accordingly, Plaintiffs have failed to carry their burden of proving the existence of a nondischargeable debt arising from substandard construction work.

---

example, Plaintiffs alleged that Defendant had damaged certain cinder block walls within the structure, and they produced photographs to support their allegations. However, Defendant denied responsibility for some of the alleged damage and further testified that some of the damage was unavoidable if the required work were to be performed. I did not find that Defendant's testimony lacked credibility on these points. While Plaintiffs adduced testimony from certain witnesses employed in the construction industry that conflicted with Defendant's testimony about proper demolition methods, none of those witnesses were qualified as experts. Accordingly, I do not find that Plaintiffs' evidence on the topic of construction standards (in terms of demolition or any other activity) outweighed Defendant's evidence. Therefore, my findings of substandard workmanship by Defendant are limited to those instances where Debtor admitted that his work was substandard.

b. *Plaintiffs' case under § 523(a)(2)(A).*

Under § 523(a)(2)(A) a debt may be found to be nondischargeable if it was obtained by "false pretenses, a false representation, or actual fraud." [6] Plaintiffs have alleged that Defendant made false representations, intending to deceive them, which resulted in injury. "The elements of a claim under § 523(a)(2)(A) are: the debtor made a false statement with the purpose and intention of deceiving the creditor; the creditor relied on such false statement; the creditor's reliance on the false statement was justifiably founded; and the creditor sustained damage as a result of the false statement." *Fuller v. Johannessen (In re Johannessen)*, 76 F.3d 347, 350 (11th Cir. 1996)( *citing Schweig v. Hunter (In re Hunter),* 780 F.2d 1577, 1579 (11th Cir.1986)); *City Bank & Trust Co. v. Vann (In re Vann),* 67 F.3d 277 (11th Cir.1995). "The existence of fraudulent intent under § 523(a)(2)(A) hinges on whether the debtor, at the time the debt is incurred intended to honor the obligation." *In re Burwell,* 276 B.R. 851, 854 (Bankr. N.D. Ohio 2002); *accord In re Mills*, 345 B.R. 598, 604 (Bankr. N.D. Ohio 2006). Although a debtor's intent to defraud a creditor must be present when the debt was incurred, subsequent conduct may shed light on intent at the inception of the contract. *Williamson v. Busconi*, 87 F.3d 602, 603 (1st Cir. 1996).

The Court of Appeals for the Eleventh Circuit has held that, under proper circumstances, claims arising from a building contractor's alleged fraud and breach of contract in the course of the construction of a residence may be excepted from discharge under

---

[6] False pretenses means an implied misrepresentation or conduct that the actor intends to create a false impression. *In re Smith*, 2006 WL 3333801 (Bankr. M.D.N.C.). False representation means an express misrepresentation. *In re Sanchez*, 277 B.R, 904, 908 (Bankr. N.D. Ill. 2002). Actual fraud "is something said, done, or omitted by a person with the design of perpetrating what he knows to be a cheat or deception." *Black's Law Dictionary* 661 (6th ed. 1990).

§ 523(a)(2)(A).[7] *See Fuller v. Johannessen (In re Johannessen)*, 76 F.3d 347 (11th Cir. 1996). In their complaint, Plaintiffs did not specify the precise representations that were made by Defendant on which they based their objection under § 523(a)(2)(A). While this lack of specificity did not provide grounds for dismissal of the complaint under Fed. R. Civ. P. 9, Plaintiffs were required to produce evidence of specific misrepresentations in order to meet their burden of proof. The only representation cited by Plaintiffs is a general assurance alleged to have been made by Defendant that he would "take care of everything" in connection with the construction.[8]

Plaintiffs and Defendant entered into the agreement for the remodeling services at a time when both Plaintiffs and Mrs. Mitchell's father were seriously ill. Plaintiffs argue that their incapacity to monitor the progress of the construction, and Defendant's knowledge of their limitations, justified their reliance on Defendant's representations. Although these facts may support a finding that Plaintiffs justifiably relied on Defendant's statement, the representation itself is insufficient to constitute a false statement made with intent to deceive Plaintiffs. To allow casual assurances to form the basis for a finding of nondischargeability under § 523(a)(2)(A) would clearly expand this exception to discharge beyond its intended scope.

If Plaintiffs' theory is that Defendant fraudulently agreed to undertake the construction project, Plaintiffs failed to specify the elements of the alleged fraud. Defendant's failure to perform the the services required under the contract according to its terms does not constitute

---

[7]In *Johannessen*, the Circuit reversed an order of the bankruptcy court granting a debtor/building contractor's motion to dismiss a complaint filed against it that was based on grounds similar to those alleged in Plaintiffs' objection to discharge in this case.

[8]In the course of her testimony, Linda Mitchell also attributed a similar statement to Jeffrey Shultz, a building inspector for Plaintiffs' township.

8

fraud.[9] "A mere breach of [a] construction contract alone does not establish fraud or misrepresentation for purposes of section 523(a)(2)(A)." *In re Antonious*, 358 B.R. 172, 182 (Bankr. E.D. Pa. 2006) (*citing In re Maurer*, 112 B.R. 710, 713 (Bankr. E.D. Pa. 1990)). *See also In re Mills,* 345 B.R. at 604 ("Alone, a broken promise will not establish the existence of any intent to deceive."); *Cutler v. Lazzara (In re Lazzara)*, 287 B.R. 714, 722 (Bankr. N.D. Ill. 2002) (debts for intentional "breach of contract are not excepted from discharge"); *Krenowsky v. Haining (In re Haining)*, 119 B.R, 460, 463 (Bankr. D. Del. 1990)("mere breach of contract by the debtor without more, does not imply the existence of fraud").

Generally, courts have found construction-related debts to be nondischargeable under § 523(a)(2)(A) only when the debtor/contractor intentionally misrepresented a material fact or qualification in soliciting or obtaining the work. *See, e.g., In re Clark,* 330 B.R. 702, 707 (Bankr.C.D.Ill.2005) (finding that the debtor's false representation that he was a licensed and insured contractor was sufficient to bring debt under the scope of section 523(a)(2)(A)); *In re Fuselier,* 211 B.R. 540, 545 (Bankr.W.D.La.1997) (finding the debt nondischargeable under

---

[9]In Pennsylvania, a builder/vendor "impliedly warrants that the home he has built and is selling is constructed in a reasonably workmanlike manner and that it is fit for the purpose intended – habitation." *Elderkin v. Gaster*, 447 Pa. 118, 128, 288 A.2d 771, 777 (1972). This implied warranty was later extended to include home builders who are not also vendors of the residence that is constructed. *Groff v. Pete Kngsley Bldg., Inc.*, 274 Pa. Super. 377, 543 A.2d 128 (1988). The *Groff* Court expressly limited its holding to "a written construction contract executed by a builder and a layperson for the construction, according to plans and specifications furnished by the builder, of a residential house upon the layperson's land." *Id.* 543 A.2d 133, fn. 2. The Court "express[ed] no opinion on whether an implied warranty of habitability will be extended in other factual contexts." In the instant case, Defendant demolished an existing structure down to its foundation, and then built a new structure in its place. I have found no Pennsylvania case that has specifically addressed the *Groff* ruling for a construction project similar to the instant one. Thus, I cannot conclude with certainty that state law would have attributed to Defendant an implied representation that his work would be done according to industry standards.

9

section 523(a)(2)(A) because the debtor falsely represented to the creditors that he had a contractor's license and did so with the intent to deceive them); *In re McDaniel,* 181 B.R. 883, 887 (Bankr. S.D. Tx. 1994) (holding the debt not discharged because the debtor falsely represented that he was an architect).

Plaintiffs do not assert that Defendant misrepresented his qualifications, rather they argue forcefully that the sheer number of mistakes in the construction and the magnitude of the work necessary to rehabilitate the structure demonstrates that Defendant never could have intended to do the work properly. I do not find Plaintiffs' argument to be convincing. Defendant successfully demonstrated that Plaintiffs frequently watched his work as it progressed and that they were, to no small degree, pleased with the results.[10] Accordingly, I conclude that Plaintiffs' case under § 523(a)(2)(A) must fail because the record lacks sufficient evidence that Debtor misrepresented his qualifications or intended not to perform the work properly at the time the parties entered into the agreement.

An appropriate order will be entered, and a hearing will be scheduled at which time Plaintiffs may present evidence of their damages in accordance with my findings as stated above.

By the Court,

Mary D. France
Bankruptcy Judge

Date: March 25, 2008

*This document is electronically signed and filed on the same date.*

---

[10] Plaintiff Linda Mitchell testified on direct examination that she was "tickled with the work" as she watched it progress. (N.T. 84)

10

Case 1:06-ap-00119-MDF    Doc 34    Filed 03/25/08    Entered 03/25/08 14:07:42    Desc
Main Document    Page 10 of 10