IN THE UNITED STATES BANKRUPTCY COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| IN RE: | |
| GEORGE Q. BEAMENDERFER | CHAPTER 7 |
| d/b/a BEAMENDERFER HOME | |
| IMPROVEMENTS, d/b/a PUTT | |
| HOME REMODELING, and | |
| JACQUELINE A. BEAMENDERFER | CASE NO.: 1:06-bk-00610MDF |
| a/k/a JACQUELINE A. PUTT, | |
| a/k/a JACQUELINE A. FORTNEY, | |
| d/b/a PUTT HOME REMODELING, | ADV. NO.: 1:06-ap-00119 |
|     Debtors | |
| | |
| GARY L. MITCHELL and | |
| LINDA MITCHELL, | |
|     Plaintiffs | |
| | |
| vs. | |
| | |
| GEORGE Q. BEAMENDERFER, | |
| d/b/a BEAMENDERFER HOME | |
| IMPROVEMENTS, | |
|     Defendant | |

## OPINION[1]

On March 25, 2008, this Court determined that the claim of Gary L. Mitchell and Linda Mitchell ("Plaintiffs") was non-dischargeable pursuant to 11 U.S.C. § 523(a)(6). I found that Plaintiffs held a non-dischargeable claim against George Q. Beamenderfer ("Debtor")[2] for costs incurred for the demolition and reconstruction of their residence located at 1045 Oyster Mill Road, East Pennsboro Township, Pennsylvania. A hearing was held on August 29, 2008 to determine the non-dischargeable portion of Plaintiffs' claim. For the reasons set forth below, I

---

[1] This Court has jurisdiction pursuant to 28 U.S.C. §§157 and 1334. This matter is core pursuant to 28 U.S.C. §157(b)(2)(A), (I) and (O). This Opinion constitutes findings of fact and conclusions of law made pursuant to Federal Rule of Bankruptcy Procedure 7052.

[2] Debtor represented himself at both the trial on liability and the subsequent trial on damages.

find that the non-dischargeable portion of damages suffered by Plaintiffs pursuant to 11 U.S.C. § 523(a)(6) is $65,257.54.

In my earlier Opinion, I determined that Plaintiffs' claim against Debtor was nondischargeable under § 523(a)(6) because Debtor knowingly failed to obtain appropriate inspections of Plaintiffs' property during construction and filed a false application for a building permit. Because of these failures, Plaintiffs could not obtain a certificate of occupancy until significant portions of the reconstructed house were demolished to provide access for inspections and additional work was performed to bring the dwelling into compliance with township building codes. After discovering that they would be unable to obtain an occupancy permit without making major alterations to their home, Plaintiffs hired Pennsylvania Remodelers ("PA Remodelers") to perform the necessary demolition and reconstruction services. Plaintiffs, however, did not limit the scope of the work to demolishing and reconstructing portions of the home altered by Debtor. They significantly expanded the work at a cost more than four times the original contract.[3]

Adopting the out-of-pocket approach, the Court must determine the damages proximately caused by Debtor's willful and malicious conduct. The measure of damages that result from a willful and malicious injury under 11 U.S.C. § 523(a)(6) is "an amount equal to the injury caused by the debtor rather than any other sum owed by the debtor on a contractual basis." *In re LeBlanc*, 346 B.R. 706, 714 (Bankr. M.D. La. 2006) (quoting *In re Mondicue*, 926 F.2d 452, 453

---

[3]Debtor's contract for services on the Plaintiff's home was for $95,440.00. Linda Mitchell testified at the damages hearing that Plaintiffs paid PA Remodelers approximately $400,000.00 for its services.

(5th Cir. 1991)). All debts that flow from the conduct that violated § 523(a)(6) are non-dischargeable. *In re Stokes*, 150 B.R. 388, 393 (W.D. Tex. 1992).

In my prior Opinion, I specifically found that Plaintiffs' damages consisted of the cost of demolishing much of the structure that had been erected by Debtor and rebuilding the home in compliance with township codes. To substantiate this aspect of their claim for damages, Plaintiffs offered the expert testimony of a professional engineer, David Black ("Black"). Using, *inter alia*, photographs of the residence taken while Debtor was working on the premises, a list of deficiencies in the work performed by Debtor identified by the codes enforcement officer, and additional photographs taken after deficiencies were identified, Black described the work that would have been required to demolish portions of the structure to allow for inspection of the home's construction and to make the required changes to the structure. Black offered his opinion as to the costs that would have been incurred to secure compliance with the Pennsylvania Uniform Construction Code for the work performed by Debtor. According to Black, the cost of demolishing portions of the structure; examining plumbing, wiring and other systems; preparing documentation of code compliance; obtaining required permits; and performing the necessary reconstruction was $58,047.00.

Debtor failed to rebut these estimates and simply stated that some of the deficient work identified in the photographs was not performed by him. While admitting that Black was a well-qualified expert in the field, he questioned the costs related to the preparation of plans and drawings that typically are not required for residential construction.[4] I find that Black's testimony

---

[4] In his calculations, Black included $15,650.00 in "Design and Professional Fees." These fees included the preparation of various mechanical, plumbing, electrical and other structural drawings as well as site visits and coordination with township codes officials. Black conceded that these expenses were not typical in residential construction, but testified that they were

3

was credible, and I accept his opinion as to the amount of direct costs that were incurred by Plaintiffs as a consequence of Debtor's willful and malicious actions.

Plaintiffs also sought as damages reimbursement for: (1) attorneys fees paid by Plaintiffs to Joseph A. Macaluso, ("Macaluso"), who represented them in a suit against Debtor in the Court of Common Pleas of Cumberland County, Pennsylvania before Debtor filed his bankruptcy petition; and (2) moving and storage expenses incurred in connection with the demolition and reconstruction.

Pennsylvania courts follow the American rule that damages do not include a party's attorneys' fees "absent an express statutory authorization, a clear agreement by the parties or some other established exception." *Merlino v. Delaware County*, 556 Pa. 422, 425, 728 A.2d 949, 951 (1999). Neither does the Bankruptcy Code authorize an award of attorneys' fees to the prevailing creditor in an action objecting to a debtor's discharge. *In re Itule*, 114 B.R. 206, 213 (B.A.P. 9th Cir. 1990). *But see In re Bertola*, 317 B.R. 95, 99 (B.A.P. 9th Cir. 2004) (Creditor entitled to recover attorneys' fees and costs in pursuing § 523(a)(2)(A) and § 523(a)(6) actions when creditor could recover fees under state law.) No evidence was presented that Plaintiffs would be entitled to recover attorneys' fees under Pennsylvania law, nor did Plaintiffs allege that they were entitled to recover fees under the terms of their contract with Debtor. Therefore, Plaintiffs' request for reimbursement of fees paid to Attorney Macaluso will be denied.

Plaintiffs also seek reimbursement for moving and storage charges totaling $14,674.32 and for apartment rental payments of $8,400.00 during the six-month period that they were unable to occupy their residence. Although these are appropriate damages related to the

---

necessary in the within case because of the need to resolve numerous possible deficiencies identified by township officials.

4

Case 1:06-ap-00119-MDF    Doc 40    Filed 09/10/08    Entered 09/10/08 15:21:09    Desc
Main Document    Page 4 of 7

demolition and reconstruction of the work performed by Debtor, Plaintiffs failed to establish that all of these expenses were attributable to the injury inflicted by Debtor.

Black testified that the Plaintiffs would have been required to vacate the home and either cover or remove furnishing while corrective construction was performed. Accordingly, had Plaintiffs provided clear evidence that their requested expenses arose because of Debtor's wrongful conduct, all of the expenses would have been allowable. However, the Court was unable to decipher from the evidence presented how some of the costs were attributable to Debtor's misconduct.

Because Plaintiffs opted to significantly expand the home improvement project beyond the scope of work performed by Debtor, it was incumbent upon them to distinguish the expenses related to correcting Debtor's work from expenses stemming from the unrelated aspects of the expanded renovations. Just as Debtor is not responsible for the cost of approximately $300,000.00 in additional improvements that Plaintiffs elected to make when they retained PA Remodelers, he also is not responsible for other out-of-pocket expenses related to the expanded project.

Plaintiffs requested reimbursement for expenses incurred for a self-storage unit at Capital Self Storage for the period November 2004 through July 2007. Linda Mitchell ("Mitchell") testified that Plaintiffs vacated their residence in March 2005[5] because they were concerned

---

[5] Although Mitchell testified that she and her husband moved from the residence in March 2005, the testimony is conflicting as to whether they were absent from their home from 2005 until the reconstruction was completed. She testified that Plaintiffs moved out in March 2005, but she also stated that "we were moving in and out to try to get things fixed. Sometimes we moved downstairs because we could still go up and use the plumbing upstairs while people worked. But this was all in an attempt to patch it rather than to tear it all down, but finally I came to recognize that we did have to tear it down, and then we moved out for the demolition." (N.T. 103-04, October 4, 2007). Plaintiffs' only requested reimbursement of apartment rental payments for a six-month period.

about the safety of the premises. However, according to PA Remodelers' construction foreman, his firm did not commence work at the Plaintiff's residence until approximately January 2007. Plaintiffs did not attempt to explain the reasons for the delay in beginning reconstruction, but the Court cannot assume that the delay was attributable to Debtor's wrongful conduct.

In addition, because the renovations to Plaintiffs' residence by PA Remodelers was more extensive than the work performed by Debtor, it is reasonable to assume that the period during which Plaintiffs would have been dislocated if the structure simply had been demolished and then rebuilt would be shorter than the six months that were required for the expanded project.

The total expenses for storage at Capital Self Storage during the period January 1, 2007 through July 31, 2007 are $3,458.04. Because I conclude that if PA Remodelers had merely corrected Debtor's work it would have taken less time to complete than the work that actually was performed, the Court will limit the non-dischargeable portion of Plaintiffs' storage expenses to one half of the amount paid during the reconstruction, or $1,729.02.

Plaintiffs also sought reimbursement for moving and storage expenses paid to Harrisburg Storage Co. and George W. Weaver & Sons.[6] In the two exhibits presented at trial, Plaintiffs requested reimbursement for $5,299.21 in moving and storage costs. However, the Court notes that of this sum, two entries were duplicated in a total amount of $210.00.[7] Mitchell testified that some of the charges were for moving and some were for storage, but she made no effort to distinguish between these charges. As with the expenses for the self-storage units, most of the charges listed are not for periods when demolition and reconstruction was taking place at the

---

[6]Mitchell testified that Harrisburg Storage Co. and George W. Weaver & Sons are related companies.

[7]Check numbers 6623 and 6648 were listed twice on Plaintiff's Exhibit 3b.

residence.[8] Therefore, only the charges for the period between January and September 2007 in an amount of $2,563.04, divided by half to account for the expanded construction, in an amount of $1,281.52 will be determined to be nondischargeable moving and storage costs.

Finally, Plaintiffs testified that they moved into an apartment for six months during demolition and construction. Again, because the construction project undertaken by PA Remodelers was more extensive than required to correct the injury inflicted by Debtor, the costs of alternate housing will be allowed for a three-month period in a total amount of $4,200.00.

In conclusion, damages as a result of the willful and malicious injury inflicted upon Plaintiffs are determined by the Court to be $65,257.54 consisting of $58,047.00 for demolition and reconstruction costs; $3010.54 for storage and moving costs; and $4,200.00 for rental expenses. Accordingly, the Court determines that Plaintiffs' claim against Debtor to the extent of $65,257.54 is non-dischargeable.

An order consistent with this Opinion will be entered.

By the Court,

*Mary D. France*
Bankruptcy Judge

*This document is electronically signed and filed on the same date.*

Date: September 10, 2008

---

[8]It is certainly possible that some of the checks paid to Harrisburg Storage Co. and to George W. Weaver & Sons, while paid outside the nine month period that the foreman for PA Remodelers stated that his firm was working at Plaintiffs' home, were for moving services so that demolition and reconstruction could be commenced. However, Plaintiffs have failed to meet their burden to establish the amount of the damages with reasonable certainty. The Court cannot base a damages award on speculation or conjecture.